**UNITED STATES DISTRICT COURT**
**DISTRICT OF NORTH DAKOTA**

---

UNITED STATES OF AMERICA,

              Plaintiff,

v.

DANIEL CHRISTENSEN,

              Defendant.

Case No. 1:25-cr-189

**DEFENDANT'S MOTION TO COMPEL DISCLOSURE OF COMMUNICATIONS; MEMORANDUM IN SUPPORT**

---

## MOTION

Defendant Daniel Christensen, by and through undersigned counsel, respectfully moves the Court, pursuant to Federal Rule of Criminal Procedure 16, the Due Process Clause of the Fifth Amendment, *Brady v. Maryland*, 373 U.S. 83 (1963), and this Court's inherent supervisory authority, for an Order compelling the United States to produce, and directing third-party retention by the Williams County State's Attorney's Office of, all communications—written, electronic, and recorded—between any Assistant United States Attorney, Special Assistant United States Attorney, or agent of the United States, on the one hand, and Williams County Assistant State's Attorney Nathan K. Madden, the Williams County State's Attorney's Office, or any other state-level prosecutor or investigator associated with the dismissed prosecution captioned *State of North Dakota v. Daniel Christensen*, No. 27-2024-CR-01458, on the other hand, for the period August 18, 2025 through September 15, 2025 (the "Coordination Window"). In the alternative, the Defendant moves the Court to conduct in camera review of the responsive materials, accompanied by a particularized privilege log, prior to entry of any ruling upon a competing claim of privilege.

1

The grounds for the Motion are set forth in the accompanying Memorandum in Support, which is incorporated herein by reference.

## MEMORANDUM IN SUPPORT

### INTRODUCTION

The chronology in this case is not merely suggestive; it is arresting. On December 17, 2024, Mr. Christensen was charged in state court on identical charges and identical facts to the captioned federal indictment; notwithstanding the actual name of the charge is Possession of Certain Materials Prohibited in the state system.  On August 17, 2025, in state court, Judge Louser of the Northwest Judicial District entered an Order granting Mr. Christensen's Fourth Amendment motion to suppress, holding that the search warrant supporting the entire state prosecution lacked particularity, was constitutionally overbroad, and could not be salvaged by the good-faith exception. *State v. Christensen*, No. 27-2024-CR-01458 (N.D. Dist. Ct., Northwest Jud. Dist., Aug. 17, 2025) (Louser, J.).

Two (2) days later, on August 19, 2025, Homeland Security Investigations opened the federal investigation that produced this prosecution, but materially no new investigation was completed. Approximately ten (10) days after the dismissal, on or about August 27, 2025, the Bismarck USAO presented the matter to a federal grand jury, and they returned the Indictment now before this Court. The federal case rests upon the same suppressed evidence, employs no witnesses unique to federal jurisdiction, and was preceded by no material federal investigative work.

Mr. Christensen has sought, by lawful state open-records request, the email correspondence of Assistant State's Attorney Nathan K. Madden, the state prosecutor who lost the suppression hearing and whose office bore the dismissal. That request has been refused in its entirety, in a

categorical denial that omits the particularized showing North Dakota law requires of a public entity invoking exemption. Undersigned counsel has also requested the same body of communications from the Assistant United States Attorney prosecuting this case. The Government has refused, asserting that Federal Rule of Criminal Procedure 16(a)(2) shields the materials. It does not.

The discovery Mr. Christensen seeks is not Rule 16 discovery, and Rule 16(a)(2) does not, by its own terms, sweep it within its prohibition. The communications are sought in aid of a constitutional motion—the contemplated motion to dismiss the Indictment as the product of prosecutorial vindictiveness and as the kind of successive prosecution that operates as a "tool" of another sovereign within the meaning of *Bartkus v. Illinois*, 359 U.S. 121, 123–24 (1959). The Supreme Court has confirmed, in the closely analogous context of selective prosecution, that discovery in aid of such a constitutional claim is governed not by Rule 16 but by the threshold articulated in *United States v. Armstrong*, 517 U.S. 456, 463, 468 (1996). That threshold is met here. The temporal proximity is extraordinary; the evidentiary identity is total; the absence of independent federal investigative effort is, on the present record, admitted; and the quantitative anomaly of the case under federal sentencing norms—an alleged offense conduct involving twenty to forty images in a federal pipeline whose median image count is 4,265—is striking. Taken together, these objective facts furnish substantial indicia that this prosecution exists to circumvent a state court's Fourth Amendment ruling, not to vindicate a genuine and independent federal interest.

The Court should compel production. In the alternative, it should review the materials *in camera* with a particularized privilege log so that any genuine privilege may be honored without

3

permitting the global assertion of privilege to mask the very evidence the Defendant's constitutional motion requires.

## FACTUAL BACKGROUND

### A. The State Prosecution and Its Termination on Fourth Amendment Grounds.

The state prosecution arose from a CyberTipline report submitted by Synchronoss Technologies, Inc. to the National Center for Missing and Exploited Children, identifying a single image associated with a Verizon Cloud account tied to Mr. Christensen. North Dakota Bureau of Criminal Investigation Special Agent Taylor S. Schiller obtained a warrant on January 18, 2024, and, in executing it, received approximately seventy thousand data files from Synchronoss. After review, the State alleged that some forty-eight files contained child sexual abuse material and ten more were of uncertain age; the remaining sixty-nine thousand four hundred thirty-nine files were, by the agent's own testimony, non-pertinent.

Mr. Christensen moved to suppress all evidence on the ground that the warrant was constitutionally overbroad and lacked particularity. On August 17, 2025, the Honorable Stacy J. Louser, District Judge, agreed. *State v. Christensen*, No. 27-2024-CR-01458, Order Granting Defendant's Motion to Suppress, ¶¶ 28–35 (Aug. 17, 2025). The Court held that, with no temporal limitation and no meaningful confinement of data types, "the warrant was so wide-ranging that the limitation to the alleged criminal subject matter lacked particularity." *Id.* ¶ 33. The Court declined to apply the good-faith exception, observing that the warrant was "invalid due to its lack of particularities and severe overbreadth in allowing the search of the entire Cloud account," *id.* ¶ 38, and rejecting as "mere speculation" the State's argument that the custodian would have disregarded any limitation, *id.* ¶ 39. Williams County Assistant State's Attorney Nathan K. Madden represented the State at the hearing. *Id.* ¶ 2. The State did not pursue an appeal. The case was

ultimately dismissed upon motion by the state on September 11, 2025, after all their evidence was suppressed by the Order.

### B. The Federal Investigation and Indictment.

The chronology that followed is uncontested and material. Per the Homeland Security Investigations (HIS) coversheet (Bates 306), HSI re-opened the federal investigation on August 19, 2025, two (2) calendar days after the state dismissal. "Re-opened" is the opportune phrase because HSI appears to have assisted BCI in the original workup a year prior before the decision was made to maintain this case at the state level—until they lost and needed a second bite at the apple. Regardless, the federal grand jury returned the Indictment now before this Court on August 27, 2025, nine days after the dismissal; it is beyond reproach that the USAO-Bismarck used, perhaps exclusively, illegally obtained evidence to garner the indictment and it is unknown if the grand jury was informed of the illegal nature of BCI's search. The Government has not, in conferral with undersigned counsel, identified any new witness procured between August 18 and August 27 that was unavailable in state court, any new investigative technique deployed during those nine days, or any independent federal investigative effort that preceded August 19 than mentioned. The federal case is structured exclusively around the very evidence the state court suppressed.

### C. The Refusal of Open-Records Production by the State Prosecutor.

On April 14, 2026, counsel served a date-bounded, keyword-defined open-records request under N.D.C.C. § 44-04-18 upon the Williams County State's Attorney's Office, requesting the email of Mr. Madden for the three-month interval July 1, 2025 through September 30, 2025—a window that encompasses the Coordination Window. The request is attached hereto as Exhibit A. On May 5, 2026, Mr. Madden returned a one-paragraph denial, asserting in blanket fashion the active-investigation and attorney-work-product exemptions of N.D.C.C. §§ 44-04-18.7 and 44-04-

19.1, identifying no specific record withheld, performing no record-by-record analysis, and offering no segregation of non-exempt material under N.D.C.C. § 44-04-18.10. The denial is attached hereto as Exhibit B. The pertinent point, for present purposes, is twofold: the state prosecutor whose case was lost on suppression has elected to withhold every email touching the keywords associated with this matter during the Coordination Window, and the United States Attorney's Office has separately refused production of the same body of communications in this proceeding.

### D. The Government's Invocation of Rule 16(a)(2).

By electronic mail, the Assistant United States Attorney prosecuting this case has taken the position that the requested communications are exempt from disclosure under Federal Rule of Criminal Procedure 16(a)(2). The Government has not identified any record by date, author, or recipient; has not furnished a privilege log; has not represented that any record-specific review has occurred; and has not asserted any other privilege. The Government's position appears to be categorical and unparticularized.

### LEGAL FRAMEWORK

### A. Rule 16(a)(2) Is Not the Operative Rule for Discovery in Aid of a Constitutional Motion.

Rule 16(a)(2) exempts from defense inspection "reports, memoranda, or other internal government documents made by an attorney for the government or other government agent in connection with investigating or prosecuting the case." Fed. R. Crim. P. 16(a)(2). The Rule operates as a limit on the scope of Rule 16(a)(1)—it withdraws certain categories of material from the universe Rule 16 otherwise opens to defense inspection. It is not, by its terms or by Supreme Court construction, a freestanding evidentiary privilege that immunizes prosecutorial communications from court-ordered production under any other source of authority.

6

The Supreme Court has settled this point in the closely analogous context of selective-prosecution discovery. In *Armstrong*, the Court considered whether Rule 16(a)(1) authorized discovery in aid of a selective-prosecution claim and concluded that it did not, reasoning that "in the context of Rule 16 'the defendant's defense' means the defendant's response to the Government's case in chief." 517 U.S. at 462. The Court then held that "Rule 16(a)(1)(C) authorizes defendants to examine Government documents material to the preparation of their defense against the Government's case in chief, but not to the preparation of selective prosecution claims." *Id.* at 463. The corollary, often overlooked, is decisive here: because Rule 16 does not reach discovery in aid of a constitutional motion challenging the prosecution itself, neither does Rule 16(a)(2)'s exemption. *Armstrong* identifies a distinct, *non-Rule-16* framework, grounded in the court's authority to police claims that the prosecution has been brought on impermissible grounds, and prescribes the showing required to obtain discovery within that framework. *Id.* at 468. The Government's reliance upon Rule 16(a)(2) to defeat a request made in aid of a vindictive-prosecution motion misapprehends the structure of *Armstrong* entirely.

Two further observations confirm the point. First, the materials sought are not internal *intra-office* deliberations of either office; they are *inter-office* communications exchanged between two separate sovereigns through their respective representatives—precisely the kind of cross-jurisdictional correspondence whose existence and content are themselves the subject of the constitutional inquiry. Rule 16(a)(2) speaks to documents "made by the attorney for the government or other government agent." Communications *between* a federal prosecutor and a state prosecutor are not "internal" to any one office, and the Rule's structural concern—protecting the deliberative space of the prosecuting attorney from defense intrusion—has only attenuated application here. Second, even where Rule 16(a)(2) would otherwise apply, it does not displace

independent constitutional disclosure obligations under *Brady v. Maryland*, 373 U.S. 83 (1963), and *Giglio v. United States*, 405 U.S. 150 (1972), which run on a separate axis.

### B. Vindictive Prosecution Doctrine and the Threshold for Discovery.

The Due Process Clause prohibits a prosecutor from punishing a defendant for the exercise of a legal right. The doctrine traces to *North Carolina v. Pearce*, 395 U.S. 711 (1969), in which the Supreme Court held that vindictiveness on the part of a sentencing judge against a defendant who had successfully attacked his first conviction "must play no part" in the sentence imposed on retrial. *Id.* at 725. The Court extended the principle to prosecutorial charging decisions in *Blackledge v. Perry*, 417 U.S. 21 (1974), holding that the Due Process Clause is offended by those "possibilities of increased punishment upon retrial after appeal" that "pose a realistic likelihood of 'vindictiveness.'" *Id.* at 27. A defendant is entitled to pursue his rights "without apprehension that the State will retaliate by substituting a more serious charge for the original one, thus subjecting him to a significantly increased potential period of incarceration." *Id.* at 28.

The Court has subsequently calibrated the doctrine, declining to extend a *presumption* of vindictiveness in certain pretrial settings. In *Bordenkircher v. Hayes*, 434 U.S. 357 (1978), the Court held that a prosecutor's threat, during plea negotiations, to bring more serious charges if a defendant refused to plead did not violate due process. *Id.* at 363–65. In *United States v. Goodwin*, 457 U.S. 368 (1982), the Court held that no presumption of vindictiveness ordinarily arises in the pretrial setting from a prosecutor's decision to bring additional or more serious charges. *Id.* at 381. But *Goodwin* was at pains to leave open the actual-vindictiveness inquiry: "In declining to apply a presumption of vindictiveness, we of course do not foreclose the possibility that a defendant in an appropriate case might prove objectively that the prosecutor's charging decision was motivated by a desire to punish him for doing something that the law plainly allowed him to do." *Id.* at 384.

*Goodwin*'s "appropriate case" language is the doorway through which the present Motion proceeds.

The Eighth Circuit has applied *Goodwin* and its antecedents in a series of decisions. A defendant may demonstrate vindictiveness in either of two ways: through objective evidence of an improper motive, or, in rare circumstances, by invoking a presumption arising from facts that present a realistic likelihood of vindictiveness. *United States v. Hirsch*, 360 F.3d 860, 864 (8th Cir. 2004); *United States v. Kriens*, 270 F.3d 597, 602 (8th Cir. 2001); *United States v. Rodgers*, 18 F.3d 1425, 1429–30 (8th Cir. 1994). The burden lies with the defendant, *United States v. Leathers*, 354 F.3d 955, 961 (8th Cir. 2004), and is described as a heavy one, *United States v. Campbell*, 410 F.3d 456, 461 (8th Cir. 2005), with the recognition that prosecutors enjoy broad charging discretion. The presumption is reserved for "rare instances," *id.*; *United States v. Peoples*, 360 F.3d 892, 896 (8th Cir. 2004), and a defendant who relies upon it must show that the context "present[s] a reasonable likelihood of vindictiveness," *Campbell*, 410 F.3d at 462. The present Motion seeks discovery in aid of the actual-vindictiveness prong; whether the additional, more demanding showing required to invoke the presumption can ultimately be made will turn upon the very materials the Government has refused to disclose.

The salient point is one of order. To establish vindictiveness, a defendant must come forward with proof; to *come forward* with proof, a defendant must first be permitted to inspect the materials that contain it. The Supreme Court has resolved the discovery question in the closely analogous selective-prosecution setting. A defendant must produce "some evidence tending to show the existence of the essential elements of the defense"—a standard the Court has variously described as a "colorable basis," a "substantial threshold showing," a "substantial and concrete basis," or a "reasonable likelihood." *Armstrong*, 517 U.S. at 468. The Eighth Circuit applies the

same threshold formulation in selective-prosecution settings, *United States v. Parham*, 16 F.3d 844, 846–47 (8th Cir. 1994), and the same logical structure—a threshold showing of objective evidence, opening the door to constitutionally-grounded discovery—governs in the vindictive-prosecution setting in this Circuit. *See Hirsch*, 360 F.3d at 864 (defendant must make a "threshold showing" of vindictive prosecution); *Kriens*, 270 F.3d at 602 (objective evidence required where the presumption is inapplicable).

Persuasive authority from a sister district court, decided within the past five months, applies these principles to facts materially indistinguishable in structure from those presented here. In *United States v. Abrego Garcia*, No. 3:25-cr-00115, 2025 WL 3768093 (M.D. Tenn. Dec. 3, 2025) (Crenshaw, C.J.), the United States Attorney indicted the defendant on a charge arising from a 2022 traffic stop only after the defendant prevailed in separate civil litigation against the Government in another district. *Id.* at *1–*2. The court had previously found a "realistic likelihood of vindictiveness" entitling the defendant to discovery and an evidentiary hearing. *Id.* at *1. On the defendant's motion to compel, the court ordered *in camera* production of over three thousand documents from the Government, conducted record-by-record review, and required disclosure of a sub-set of those documents bearing on whether the prosecution "was tainted by improper motivation." *Id.* (quoting *United States v. Adams*, 870 F.2d 1140, 1141 (6th Cir. 1989)). The court rejected the Government's reliance upon blanket assertions of work-product, attorney-client, and deliberative-process privilege, observing that "[i]f the work product, attorney-client, and deliberative process privileges asserted by the government precluded all discovery in the context of a vindictiveness motion, defendants would never be able to answer the question 'what motivated the government's prosecution?'" *Id.* at *3 (citing *United States v. Zakhari*, 85 F.4th 367, 379 (6th

Cir. 2023), and *United States v. LaDeau*, 734 F.3d 561, 566 (6th Cir. 2013)). The reasoning is directly transposable to the present record.

### C. The Bartkus Sham-Prosecution Exception to Dual Sovereignty.

The dual-sovereignty doctrine generally permits successive state and federal prosecutions for the same conduct. *Bartkus v. Illinois*, 359 U.S. 121 (1959). But the doctrine has long admitted a narrow exception. The *Bartkus* Court itself reviewed the record to determine whether the state prosecution at issue was "merely a tool of the federal authorities" or a "sham and a cover for a federal prosecution, and thereby in essential fact another federal prosecution." *Id.* at 123–24. The exception is most often articulated in the inverse posture and, by parity of reasoning, applies where it is the federal prosecution that operates as a tool of the state sovereign that has lost its case. A successive federal prosecution operating in that fashion falls outside the comfort of dual sovereignty and back within the reach of constitutional constraints—including the constraint against retaliatory prosecution articulated in *Blackledge* and *Goodwin*. Where, as here, a defendant tenders objective evidence that a federal indictment was procured as the vehicle by which one sovereign avoided the binding adjudication of a co-equal sovereign, the constitutional inquiry is squarely within *Bartkus*'s carve-out, and the communications between the two sovereigns become the indispensable subject of the inquiry.

### D. Brady and Giglio Reach Material Bearing on Prosecutorial Motive.

Independent of Rule 16, the Due Process Clause requires the Government to disclose evidence favorable to the accused where the evidence is material to guilt or punishment. *Brady*, 373 U.S. at 87. The duty extends to impeachment material, *Giglio*, 405 U.S. at 154, and operates "irrespective of the good faith or bad faith of the prosecution," *Brady*, 373 U.S. at 87. Where the question pending before the Court is whether the prosecution itself has been undertaken for

11

impermissible reasons, evidence bearing on the federal prosecutor's motive—including communications received from the state prosecutor whose own case was lost on Fourth Amendment grounds—is evidence favorable to the accused on a question that may dispose of the Indictment. The *Brady* obligation is constitutional in origin and is not circumscribed by the Rule 16(a)(2) exemption.

## ARGUMENT

### I. The Objective Record Compels Discovery Under the Armstrong / Hirsch Threshold.

Four objective features of the present record, each independently probative and cumulatively decisive, satisfy any articulation of the discovery threshold this Court might apply.

### A. The Temporal Sequence Is Without Innocent Explanation.

Between the state-court order suppressing all evidence and the opening of the federal investigation, only a day or two calendar days passed. Between the suppression of the State's evidence and the return of the federal indictment, approximately nine days passed. In the ordinary federal child-exploitation matter, the investigative interval between referral and indictment is measured in many months and frequently in years. The compression of that interval to a single working week, paired with the absence of any new independent federal investigative work, is the kind of objective evidence *Goodwin* expressly contemplated. 457 U.S. at 384. It is also the kind of evidence the Eighth Circuit has described as bearing on a "realistic likelihood of vindictiveness." *Campbell*, 410 F.3d at 462. And it is the kind of evidence that *Hirsch* recognized would carry a defendant past the "conclusory allegations" concern that defeated the showing in that case. 360 F.3d at 864.

The objective structure of this case—federal indictment of a defendant who prevailed in a parallel proceeding, on the same conduct, within days of the adverse ruling—is the very structure

that Chief Judge Crenshaw of the Middle District of Tennessee recently found sufficient to support a "realistic likelihood of vindictiveness," and to support discovery and an evidentiary hearing, in *United States v. Abrego Garcia*, 2025 WL 3768093 (M.D. Tenn. Dec. 3, 2025). The temporal proximity here is, if anything, more compressed than in *Abrego Garcia*.

### B. The Federal Case Is the State Case.

The federal Indictment rests upon the same digital evidence the state court suppressed; the same custodian (Synchronoss); the same NCMEC CyberTipline report; the same BCI affidavit; the same forensic extraction. The Government has not, in the conferral that preceded this Motion, identified any federal investigative step undertaken between the state suppression order and the federal indictment that is independent of the suppressed state record. The federal case has procured no witness unique to federal jurisdiction. It rests upon no investigative product peculiar to the federal investigative agencies. The Government cannot, on the present record, articulate a substantial federal interest, independent of the State's lost prosecution, that the United States Attorney was vindicating when this Indictment issued nine days after the State's case was dismissed. The absence of an independent federal investigative footprint is itself evidence. The prosecution's evidentiary architecture is the dismissed prosecution's evidentiary architecture, transferred to a new caption.

### C. The Federal Sentencing Record Reveals a Quantitative Anomaly.

The Indictment reaches a body of putative offense conduct that, by the Government's own forensic count, consists of twenty to forty images depending on categorization and argument. The United States Sentencing Commission's most recent comprehensive analysis of non-production child-pornography offenses sentenced in federal court reports a median image count of 4,265 per case, with seventy-seven percent of cases involving six hundred or more images. *U.S. Sent'g*

*Comm'n*, *Federal Sentencing of Child Pornography: Non-Production Offenses* 5 (June 2021); *see also U.S. Sent'g Comm'n*, *Quick Facts: Child Pornography Offenses (FY 2024)* (reporting 1,375 federal child-pornography cases nationally in fiscal year 2024). The Defendant's alleged image count is more than two orders of magnitude below the federal median and well below the threshold at which seventy-seven percent of federal cases trigger the highest §2G2.2 enhancement. The federal selection criterion that ordinarily marks a case as warranting federal—as distinct from state—attention is the volume, character, or distribution conduct that places the case at the top of the federal pipeline. This case is not at that top. The selection of this prosecution for federal adoption, in a fact pattern that the United States Attorney would, in the ordinary course, leave to the State to pursue, is conspicuous. It is the kind of selection that warrants explanation. The communications the Defendant seeks may supply that explanation, in which case the constitutional claim will dissolve; or they may fail to supply it, in which case the claim will be made out. Either way, the Court should not permit the Government to defeat the inquiry by withholding the records that bear upon it.

### D. The State Prosecutor Has Refused to Surrender His Own Communications.

On May 5, 2026, in response to a date-bounded, keyword-defined open-records request under N.D.C.C. § 44-04-18 (Ex. A), Williams County Assistant State's Attorney Nathan K. Madden returned a categorical, unparticularized denial (Ex. B). The denial cited statutory exemptions in blanket form; performed no record-by-record review; furnished no privilege log; offered no segregation. Mr. Madden, as the state prosecutor who lost the suppression hearing, is the obvious counter-party to the communications the Defendant seeks. His refusal to surrender any of his email touching the keywords corresponding to this matter, during a window that spans the Coordination Window, is itself an objective fact in the record. It does not, standing alone, establish

vindictiveness; nothing yet does. But it does establish, with concrete particularity, that the State and the Federal Government are aligned in their unwillingness to permit the Defendant to inspect the communications between them. That alignment, at this juncture, demands judicial scrutiny rather than judicial deference.

### II. Rule 16(a)(2) Does Not Bar the Discovery Sought.

The Government has invoked Rule 16(a)(2). For three independent reasons, the Rule does not bar what is sought.

First, the discovery is *not* Rule 16 discovery. *Armstrong* disposes of any contrary suggestion: discovery in aid of a constitutional motion to dismiss the prosecution itself proceeds outside the Rule 16 framework, under the standard the Supreme Court there articulated. 517 U.S. at 462–63, 468. Because Rule 16 does not authorize this discovery, Rule 16(a)(2) does not prohibit it—Rule 16(a)(2) defines an exemption *from* Rule 16 disclosure obligations and has no purchase upon a discovery request grounded elsewhere. Indeed, the Eighth Circuit's *Parham* decision was cited by the Supreme Court in *Armstrong* as one of the Courts of Appeals applying the threshold standard for non-Rule-16, constitutionally-grounded discovery. *Armstrong*, 517 U.S. at 468 (citing *Parham*, 16 F.3d at 846–47).

Second, the communications at issue are not, by the most natural reading of the Rule, "internal government documents." They are inter-office communications crossing the line between two distinct sovereigns. Rule 16(a)(2) speaks to documents "made by the attorney for the government or other government agent." Communications *between* a federal prosecutor and a state prosecutor are not "internal" to any one office; they are external to both. The Rule's structural concern—protection of an office's deliberative process from defense-side inspection—applies, if at all, only awkwardly to a body of cross-jurisdictional correspondence whose subject-matter is

the very phenomenon (federal adoption of a dismissed state case) under constitutional examination.

Third, the constitutional disclosure obligations of *Brady* and *Giglio* exist independently of Rule 16 and are not subject to its exemptions. Where the materials sought bear upon prosecutorial motive that is itself the subject of a pending constitutional challenge, they are favorable to the accused for purposes of *Brady*, and the Government's duty to produce arises from the Constitution itself.

### III. The Court's Inherent Supervisory Authority Supports Production, or, at Minimum, In Camera Review.

Federal district courts possess inherent supervisory authority over the proceedings before them, including authority to police prosecutorial conduct and to order discovery as the interests of justice require. Where a defendant has come forward with the kind of objective evidence *Goodwin* contemplated, and where the discovery sought goes to the question whether the prosecution before the Court has been brought for constitutionally permissible reasons, the Court has both the authority and the responsibility to ensure that the record on which the constitutional claim will be decided is the full record. If the Government wishes to assert a *particularized* privilege—work product, deliberative process, law-enforcement privilege—as to any specific record, the Federal Rules and the common law afford it the machinery to do so; what it may not do is invoke Rule 16(a)(2) as a categorical shield against the entire universe of responsive communications without a single record-specific representation.

The Defendant therefore respectfully suggests, as an alternative to outright production, that the Court direct the Government to lodge the responsive records *in camera*, accompanied by a particularized privilege log identifying each record withheld by author, recipient, date, length, and the specific privilege asserted. The Court can then make the record-specific disclosure

16

determination that a categorical refusal has prevented. *In camera* review is the customary middle path in federal practice when a defendant has tendered a threshold showing and the Government has tendered a global claim of privilege; it allows the Court to honor any genuine privilege while ensuring that the Defendant's constitutional motion is not stifled at its evidentiary inception.

The propriety of *in camera* review in precisely this setting was recently confirmed by Chief Judge Crenshaw in *Abrego Garcia*, where, on the defendant's motion to compel discovery in support of a vindictive-prosecution claim, the court directed the Government to lodge over three thousand documents for review, conducted record-by-record inspection, and ordered production of those documents that bore upon the question whether the prosecution was "tainted by improper motivation." 2025 WL 3768093, at *1, *3. The same procedure is the right one here. It permits the Court to honor any properly invoked privilege as to any specific record, while ensuring that the Defendant's constitutional motion to dismiss will not be defeated at its evidentiary threshold by the Government's undifferentiated invocation of Rule 16(a)(2).

### IV. A Preservation Order Should Issue Pending Resolution.

To prevent inadvertent or strategic loss of responsive communications during the pendency of this Motion, the Defendant respectfully requests that the Court enter an Order directing the United States Attorney's Office, all federal investigative agencies that participated in or communicated about the federal investigation of Mr. Christensen (including, without limitation, Homeland Security Investigations), the Williams County State's Attorney's Office, the McKenzie County State's Attorney's Office, and the North Dakota Bureau of Criminal Investigation, to preserve in their current form all communications—electronic mail, text messaging, memoranda, recorded telephone communications, and any other documentary record—responsive to the request set out in this Motion, until further Order of the Court.

17

**RELIEF REQUESTED**

Undersigned has been doing defense work for a little over a decade and has never once before proceeded with a selective or vindictive prosecution claim against a prosecutorial entity. By and large, the professional esteem between the prosecution and defense, while conflict-driven, is amicable, professional, and interested in justice all around; however, colloquially, this case and what occurred smells bad. Something is amiss. Accordingly, Defendant respectfully requests that the Court enter an Order:

First, compelling the United States to produce, within fourteen days of the Court's Order, all communications—written, electronic, and recorded—between any Assistant United States Attorney, Special Assistant United States Attorney, or federal investigative agent assigned to or consulted in connection with this matter, on the one hand, and Williams County Assistant State's Attorney Nathan K. Madden, the Williams County State's Attorney's Office, or any North Dakota state-level prosecutor or investigator associated with State v. Christensen, No. 27-2024-CR-01458, on the other hand, for the period August 1, 2025, through September 30, 2025;

Second, in the alternative, directing the Government to lodge the responsive materials with the Court *in camera*, accompanied by a particularized privilege log identifying each record withheld by author, recipient, date, length, and the specific privilege asserted, so that the Court may conduct review and make a record-specific disclosure determination;

Third, directing the United States Attorney's Office, Homeland Security Investigations, the Williams County State's Attorney's Office, McKenzie County State's Attorney's Office, and the North Dakota Bureau of Criminal Investigation, to preserve in their current form all communications responsive to the request set out in this Motion, pending further Order of this Court; and

Fourth, granting such further and other relief as the Court deems just.

18

## INDEX OF EXHIBITS

**Exhibit A —** Open Records Request to Williams County State's Attorney's Office (Apr. 14, 2026), with N.D.C.C. § 44-04-21.2(3) notice (Apr. 25, 2026).

**Exhibit B —** Williams County State's Attorney's Office Written Denial signed by ASA Nathan K. Madden (May 5, 2026).

Dated this 18th day of May 2026.

**CHRIS REDMANN LAW, P.L.L.C.**
1515 Burnt Boat Drive, Suite C #286
Bismarck, North Dakota 58503
(701) 893-2149
credmann@crlawbismarck.com

_____
Chris Redmann (N.D. ID #07523)
Attorney for Defendant Daniel Christensen